## THE PRIVATEER, her tackle, etc.

*(District Court, S. D. New York. January 18, 1883.)*

**VESSEL—PERSONAL INJURIES—WHEN NOT LIABLE.**

Where a gang of workmen, including the libelant, employed to remove ballast from the ship, removed the ladder in ordinary use for workmen from the ship's side and put it down the hold, and at noon, on going off from the vessel, instead of returning the ladder to its place for their use, went aft and used the poop ladder, placed there temporarily for private use and not fastened, and were warned that it was unsafe, and the ladder fell as the libelant was going down, whereby he sustained severe injuries, *held*, that he had no ground for an action against the vessel for damages for personal injuries.

In Admiralty.

*Jesse Johnson,* for libelant, (*W. R. Beebe,* of counsel.)

*Benedict, Taft & Benedict,* for claimant.

BROWN, D. J. On considering all the evidence, I am of opinion that the libelant had no right to make use of the ladder from which he fell in leaving the ship, if there was any other means of exit. This is shown (1) by the character of the ladder itself, since it obviously was not one for the common and ordinary use of seamen and workmen: it was a heavy ladder, weighing some 200 pounds, made with steps like stairs, of hard wood, polished and finished with beeswax; (2) by the place of the ladder, which was at the poop, near the cabin, where seamen and workmen do not belong, unless they have business there; (3) by the testimony of several masters of vessels showing that a ladder of this kind is designed only for the use of the masters and officers, passengers and visitors, and is not customarily used for seamen or workmen. There is no satisfactory evidence to the

contrary; that of Collins, in my judgment, being insufficient. Moreover, the ladder is shown to have been put in its position by orders of the master for the accommodation of his family, who were expecting to visit the ship, with orders to the mate that its use by others should be forbidden. The witness Perry received these orders from the mate. He was by the ladder when the men went down, and, as he swears, forbade the use of it, and told them it was not fastened and unsafe. This notice is denied by the libelant. That a conversation did occur between him and the libelant regarding the use of the ladder is manifest from the libelant's statement that he said to Perry, "Let me pass; I want to get my dinner." No explanation is given by the libelant of the reason for this remark. All the evidence on the part of the claimant, viz., that in regard to the nature of the ladder, the use it was designed for, the orders restricting its use, the attendance of Perry to prevent its use by the workmen, and his notice to the men, which he testifies he gave, are all harmonious and consistent, and are, in fact, sustained by the libelant's testimony as to what he said to Perry. I am of opinion that McCabe and the rest of the men were notified not to use this ladder, and that they had no right to use it.

There was another ladder, with rounds, which was the ordinary means of going on and off the ship, amidships, near the main hatch, where the men were at work. I have no doubt that the men took this ladder from the side of the ship and put it down the hatch to go to the hold. It was their business to take it up and put it over the side of the ship for their use in going off. There is testimony on the part of the claimants that this ladder was used by the men on going aboard, although the libelant's witnesses testify that they used the other ladder at the poop on going aboard. There is no probability that the ordinary ladder for use amidships was removed before the men came aboard, so as to compel them to go up by the poop ladder, contrary to custom, and contrary to the master's express orders; and in testifying three years after the occurrence the libelant's witnesses might be very easily mistaken in their recollection as to which ladder they had used on going aboard, and it is impossible for me to place much reliance on their testimony in this respect. I think there is little doubt that they went up by the usual ladder amidships, and having taken up this ladder for use in the hold they were bound to replace it for going off at noon and coming on again.

But even if the men had a right to make use of the poop ladder, and no notice was given them not to use it, I do not see how the ves-

sel can be held in fault. The ladder by its construction was one tha could not be safely kept lashed to the rail, because liable thereby to be broken through the rise and fall of the tide; and it was not customary to keep such a ladder lashed. There was no defect about the ladder itself. It fell in consequence of slipping at the bottom, upon the slippery ground, on a sleety winter's day. If it had been lashed to the rail at the top, that would doubtless have prevented its slipping; but the character of the day, the slippery ground on which the ladder rested, and the want of any lashing at the top, were as well known to the workmen, or as visible to them, as to the man on board the ship. The crew had already left; the workmen discharging the ballast were employed upon an independent contract; and I do not perceive on what ground the vessel was bound to keep a man in attendance to fasten and unfasten this particular ladder for the men's accommodation, even if there had been no objection to their using it. It could have been as well secured by being held at the bottom by their companions while the men were descending, as by fastening at the top. I do not perceive, therefore, any obligation of the ship to the men in regard to it.

It is urged that, had notice been given, as claimed, the men would not have run the risk of going down upon it. But every day's experience proves that men will often foolishly risk their lives to save a few minutes' time, or to avoid a little additional trouble. McCabe had seen four men go down safely immediately before him, and evidently, as I think, insisted on following them. He went, therefore, at his own risk; and, much as his consequent injuries and suffering and loss are to be deplored, I must hold the ship not responsible, and dismiss the libel, with costs.